# Henry L. Turner v. Osgood Art Colortype Company.

### Gen. No. 12,278.

1. CONTRACT—*effect of construction of, by parties.* Where the terms of a contract are ambiguous and it appears that the parties thereto have by conduct construed the same, such construction will ordinarily be followed by the courts.

Action of assumpsit. Appeal from the Superior Court of Cook County; the Hon. ARTHUR H. FROST, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1905. Affirmed. Opinion filed March 23, 1906.

MENZ I. ROSENBAUM, for appellant; GEORGE M. HOFHEIMER, of counsel.

LACKNER, BUTZ & MILLER, for appellee.

MR. JUSTICE BAKER delivered the opinion of the court.

This is an appeal by the defendant from a judgment for $2076.60 recovered against him by appellee in the Superior Court, upon his guaranty in writing that the American Soligraph Company would carry out a contract made by that company with the plaintiff.

In 1900 appellant was a banker in Chicago, doing business under the name of Henry L. Turner & Co.

September 7th of that year the following contract and guaranty in writing was executed by the parties thereto:

"Osgood Art Colortype Co.,
        City.
                        Chicago, Sept. 7, 1900.
    Gentlemen: Regarding the matter of the pictures now in the course of completion by your company, we propose the following and offer for your acceptance: That on the acceptance of this agreement we will deliver to you a note signed by the American Consumers Alliance, Inc., and endorsed by Henry L. Turner & Company, amounting to $1,741.50. In consideration of which you agree to deliver to us ten thousand (10,000) each of the pictures (16)

sixteen subjects, as represented by the proofs now in our possession, at the earliest possible time and not later than October 15th, and on the delivery of the pictures to us, we will give you another note signed by the American Consumers Alliance, Inc., and endorsed by Henry L. Turner & Company for the amount of $1,741.50.    The two obligations to pay the account in full and both to mature January 1st, 1901.

In consideration of the several agreements above, it is fully understood that some changes are to be made on these plates according to the statement that was made by Mr. Behrens, that the plates could be altered.

Trusting you will find this satisfactory and we may have your acceptance at once, we are,

Very truly,<br>
AMERICAN SOLIGRAPH COMPANY,<br>
By J. A. Stevens.

We guarantee the execution of this contract by the American Soligraph Co.

HENRY L. TURNER & Co.

Accepted, Osgood Art Colortype Co.,
Frederick I. Osgood, Pres.,<br>
C. J. Whipple."

The plaintiff delivered to the American Soligraph Company October 15, 1900, the number of prints specified in the above contract, and two days later that company wrote plaintiff as follows:

"Chicago, Ill., Oct. 17, 1900.

The Osgood Art Colortype Co.,
    167 Adams St., Chicago, Illinois.

Gentlemen:    We hereby notify you that we do not, and will not, accept the pictures which you have delivered to us, on account of the contract bearing date September 7, 1900, between the Osgood Art Colortype Co. and the American Soligraph Co. for the reason that they do not conform with said contract, and we hereby tender the same to you and hold them subject to your order, and assume no responsibility whatever for them.

We demand that you return to us, or the American Con-

sumers' Alliance immediately, the note of the American Consumers' Alliance, dated September 7, 1900, and due January 1, 1901. We further notify you that by reason of your failure to perform said contract, we shall lose a large sum of money, by reason of our inability to fill orders already taken from our customers and we shall hold you strictly responsible for all damages sustained by us, by reason of your breach of contract.

Yours truly,<br>American Soligraph Co."

At the close of plaintiff's case defendant's counsel said to counsel for the plaintiff: "I think it ought to be stated that you are relying for recovery on the contract of September 7, 1900, upon which the defendant appears to be liable as guarantor," and plaintiff's counsel answered, "Well, that is all there is left of it, that and the prior contracts which were necessarily a part of that contract," and defendant's counsel replied: "They are merged, and their terms are simply merged; the degree of liability is changed and the character in which the defendant is liable; of course we understand, as far as that is concerned, that they may form a part of the contract of September 7, 1900."

We shall first consider the question as to how far, if at all, the prior contracts referred to by counsel were a part of the contract of September 7, 1900.

February 20, 1900, the defendant entered into a contract in writing with one J. A. Stevens, containing the following provisions:

"It is proposed to establish in Chicago a business covering the general ground of producing and selling art specialties and advertising novelties. To this end the said Stevens hereby agrees to devote his time, experience and effort for three months following this date, and the said Henry L. Turner & Co. agree to furnish for said purpose from time to time as requested by said Stevens during said period of three months the aggregate sum of $600 in money, which is to be expended by said Stevens in his discretion after frequent consultation with Henry L. Turner & Co. in laying

the foundation and preparing the way for said business, but including a reasonable allowance for current living expenses.

In case the results and prospects from said three months' effort and experience shall in the judgment of said Henry L. Turner & Co. warrant going forward with the business, they will make or provide for such further advances of capital for such business as they and the said Stevens shall jointly deem expedient.

Meanwhile during said three months a corporation named American Soligraph Company shall be organized with a stock capital of $10,000, said stock to be paid up in full by the conveyance to said company of two certain applications for United States patents on processes connected with said business and devised by said Stevens, which applications are now being prepared.

Of the stock of said company Henry L. Turner & Co. and assigns shall receive and own sixty per cent. and said corporation shall after its organization and issuance of stock own and conduct said business; and the said Stevens shall be employed by said corporation as manager of the manufacturing and selling departments at a compensation to be agreed upon from time to time after the first year, such compensation for the first year following said three months' period to be at the rate of $30 per week.

It is further agreed that such advances of money or capital as shall be made or provided for by Henry L. Turner & Co. shall be refunded before dividends are paid on the stock of the company."

April 12, 1900, plaintiff submitted to defendant the following proposition:

"Gentlemen: Answering your request for estimate we beg to quote you as follows:

We propose to furnish reproductions by our colortype process of sixteen (16) oil paintings, and print 10,000 copies of each subject; the color plates to measure not exceeding 11x16 inches, background to be a solid tint, full size of sheet viz.: 13x19 inches, and these backgrounds to be run in four different colors in addition to the three colors used in colortype printing; in other words, four subjects

will have the same color background, we to deliver in sheet containing four subjects each. Paper stock to be used to be equal to 25x38-100 lbs., coated one side only; Price $4,-700.00; 20,000 copies of same $6,000.00.

Reproductions of sixteen (16) entirely different subjects from above, colortype plates to measure not exceeding 8x12 inches and 10,000 copies of each printed in the same manner as the larger and delivered in full sheets $2,610.00; 20,000 copies of same $3,400.00.   *   *   *

The prices quoted above are for the very finest colortype reproductions which can be made from copies you furnish us to work from.   We are prepared to take this work in hand immediately and give it our prompt and most careful attention.   The writer promises to superintend the work and make every effort to give you artistic and striking results.

We trust that quality considered you will find our prices satisfactory, and we hope to be favored with your order."

April 13, 1900, plaintiff submitted to defendant another proposition in writing, at the foot of which defendant attached his acceptance thereof and returned the same to plaintiff.   Said proposition and acceptance are as follows:

"Gentlemen:—

Agreeable to your request for new estimate on the 13x19 and 10x14 inch pictures we beg to quote you as follows:

. We propose to furnish 10,000 of each of eight subjects of the larger size, run in colortype with background, for $2,500.00.   Additional 10,000 of each of eight subjects at the same time $675.00—2 backgrounds, 10,000 each of eight subjects of the 10x14 inch size $1,370.00.   Additional 10,000 of each of eight subjects at the same time $425.00.

Other conditions mentioned in our previous estimate to remain as therein stated.   We agree to complete these two lots of 10,000 or 20,000 each as you may decide, in the shortest space of time possible, and give you at least 200 copies of each subject of each size June 1st, providing one-half of the sixteen copies are put in our hands between now and the first of May, and that the last copy reaches us not later than the 15th of next month.   There is considerable work on

the plates, and we should be given all the time possible to insure a first-class job.

Hoping to be favored with your order, we are

Yours truly,

OSGOOD ART COLORTYPE CO."

"Subsequent runs of 10,000 copies $900.00; 20,000 copies $1,650.00 on the 13x19 size, this way to provide for four different colored backgrounds.

On the 10x14 inch size, subsequent runs of 10,000 will cost $595.00; 20,000, $1,100.00. These prices also provide for four background colors.

OSGOOD ART COLORTYPE CO."

C. J. W."

"Accepted as to the 1st 10,000 each with the privilege of increasing order to 20,000 on each sheet before run is finished.

HENRY L. TURNER & CO."

May 14, 1900, an application for a license to form a corporation under the name of the American Soligraph Company was made to the Secretary of State and a license issued. June 28, 1900, the commissioners filed in the office of the Secretary of State their report showing that the stock had all been subscribed, and directors of the corporation elected.

Some time in May, 1900, plaintiff completed plates and the borders or backgrounds therefor of each of the sixteen pictures mentioned in the contract of April 13, took two or three proof impressions from each plate and delivered them to Stevens. Stevens soon afterward returned one set of the proofs to plaintiff with the endorsement, "O. K. for colortype and border. J. A. Stevens," on each. The contract of April 13th provided that plaintiff should furnish defendant 200 prints from each plate June 1st, and about that time plaintiff delivered to Stevens for defendant 200 prints from each plate, 3200 in all. In June, 1900, some time after they were received by Stevens, he returned them to the plaintiff and asked plaintiff to rough or emboss them to see

how they would look, and plaintiff embossed the prints and returned them to Stevens.

As has been said, the American Soligraph Company completed its organization June 28, 1900. Up to that time Stevens had charge of the business, which was then transferred to said corporation for the defendant, under the contract of February 20, 1900. After June 28th he continued in charge of said business as the manager of said corporation.

The terms of the contract of April 13, 1900, made by the acceptance by the defendant of the proposal of the plaintiff, are not found alone in that proposal and acceptance, for that proposal states that: "the other conditions mentioned in our previous estimate to remain as therein stated." To ascertain the terms of the contract of April 13th, reference must be had to the estimate or proposal of April 12th and also to that of April 13th.

The proposal of the American Soligraph Company to the plaintiff made in its letter of September 7, 1900, begins as follows: "Regarding the matter of the pictures now in the course of completion by your company." The pictures so referred to were in the course of completion by the plaintiff under the written contract of April 13th between the plaintiff and the defendant. That contract was made by the defendant in the prosecution of the business, "of producing and selling art specialties and advertising novelties," provided for in the contract between defendant and Stevens of February 20, 1900. That business was by the provisions of that contract to be taken over by the American Soligraph Company when that corporation should be organized; the money advanced by Turner to Stevens was to be used by Stevens "in laying the foundation and preparing the way for said business," and was to be repaid to Turner, by the Soligraph Company, "before dividends were paid on the stock of that company." The evidence proves beyond all question that the purpose and intention of the defendant was, not to engage in the business of "producing and selling all specialties" himself, but was, through Stevens,

"to lay the foundation and prepare the way" for such business to be carried on by the American Soligraph Company, which was to be organized for that purpose; that the contract of April 13, 1900, was made by the defendant in furtherance of such purpose and intention; that the Soligraph Company was then organized and incorporated to carry on said business; that Stevens subscribed for 48 of the 50 shares of its capital stock; that the first meeting of stockholders to elect directors was held at the office of the defendant June 7, 1900, and that defendant was then elected one of the three directors of said company; that Stevens had at all times the control and management of said business, up to June 28th, under his contract with Turner, and after that time as manager of the Soligraph Company.

The only conclusion that can justly be drawn from the evidence in this record is, that the contract of April 13, 1900, was in fact made for the benefit of the Soligraph Company; that by consent of both the plaintiff and defendant the Soligraph Company when incorporated took the place of Henry L. Turner in his contract with plaintiff; and from that time was, by both plaintiff and defendant, dealt with and treated as a party to said contract in place of Turner, and we think that in determining the kind and quality of the prints the plaintiff was bound to furnish to the Soligraph Company and that company was bound to accept from the plaintiff under the contract of September 7th, reference must not alone be had to the contract of September 7th, but also to the contract of April 13th, between plaintiff and defendant Turner. The provisions and specifications contained in the proposal of April 12th as to the prints thereby proposed to be produced by the plaintiff for the defendant became, as we have said, a part of the proposal of April 13th and of the contract made by the acceptance by the defendant of that proposal unless modified or superseded by the proposal of April 13th, and the provisions and specifications in relation to said prints contained in the contract of April 13th between plaintiff and defendant became a part of the contract of September 7th, between

39

plaintiff and the Soligraph Company, upon which defendant is liable as guarantor, unless modified or superseded by the terms and provisions of the contract of September 7th. The prices fixed by the two contracts were different. By that of April 13th the price for

10000 prints from each of 8 13x19 plates was $2500
10000 prints from each of 8 10x14 plates was   1370   3870.00
    Deduct  10/100............................   387.00

    and we have.............................$3483.00

The contract of September 7th fixed the price for 10000 prints from each of the 16 plates at $3483, payable in two notes for $1741.50 each. The contract of September 7th also altered the time of the delivery of the prints. But the only provision in the contract of September 7th that can be held to affect the provisions of the contract of April 13th as to the kind and quality of the prints the plaintiff was to produce is the following: "In consideration of the several agreements above, it is fully understood that some changes are to be made in the plates according to the statement of Mr. Behrens that the plates could be altered."

Under this clause the plaintiff was bound to make the changes in the plates requested by the Soligraph Company which Behrens said could be made. In all other respects the specifications and provisions of the contract of April 13th in relation to the prints must be held to be a part of the contract of September 7th.

We shall next consider the question whether the plaintiff performed the contract of September 7th. That it delivered to the Soligraph Company on October 15th, 10000 prints from each of the 16 plates as provided in the contract was clearly proved and is not now disputed by appellant. Many of the transactions in relation to the prints were had by officers or agents of the plaintiff with Stevens. Stevens was not called as a witness at the trial and the testimony of the officers and agents of the plaintiff as to transactions with him was not contradicted. That Stevens immediately

after September 7th, 1900, pointed out and specified to the plaintiff the changes the Soligraph Company desired the plaintiff to make in the plates, in accordance with the contract of September 7th, and that such changes were at once made, is clearly proved by the evidence for the plaintiff and there is no evidence to the contrary. Indeed the claim, so much insisted upon for the defendant at the trial, that such changes were not made, as well as that the prints delivered were upon paper of less than the agreed weight, must be regarded as abandoned by appellant, for neither claim is stated or referred to in the brief or argument for appellant in this court.

The contention of appellant is that the evidence fails to show that the plaintiff performed the contract of September 7th. First, because the prints delivered October 15th had not been roughed or embossed; second, that some of said prints had purple, the remainder green borders, and the plaintiff ought to have delivered some prints with green, some with purple, some with red and some with yellow borders; third, that upon the borders of some of the prints delivered were little specks.

As to the specks in the borders it is sufficient to say that the borders are from two to four and a half inches wide; that the specks in the borders of the prints put in evidence by the defendant are exceedingly small specks, such as may usually be found upon close inspection in any solid color printing of any considerable size, and such as without such close inspection would not be seen or noticed, and that the evidence shows that such specks are not due to defects in the plates or to improper printing, but are caused by occasional dust particles in the air and cannot be avoided.

The contention of appellant that the plaintiff was bound to deliver to the Soligraph Company prints with backgrounds or borders in four different colors and that those delivered were in two different colors only, is without merit. Under the contract of April 13th, plaintiff was bound to deliver to Turner prints with two different backgrounds, if the latter took 10000 prints from each plate, and with four differ-

ent colored backgrounds if he took 20000 prints from each plate, and this provision was not modified by the contract of September 7th and therefore forms a part of that contract. The contract of September 7th was for only 10000 prints from each plate and the plaintiff was therefore not bound to furnish to the Soligraph Company prints with four different borders, but only prints with two different colored borders.

Again, if upon any possible theory it could be held that the plaintiff by the contract of September 7th agreed to furnish to the Soligraph Company 10000 prints from each plate with four different colored borders, it would be for that company to designate how many, if any, of such borders it desired the plaintiff to print in each of the four colors, and the evidence is undisputed that immediately after September 7th, Stevens, the manager of the Soligraph Company, directed the plaintiff not to print any borders in red or yellow, but to print some of the borders in green and the remainder in purple, and the borders were so printed.

It remains to consider whether the Soligraph Company was justified in rejecting the prints because they had not been roughed or embossed.

The contract of September 7th contains the following provision: "You (the plaintiff) agree to deliver to us (the Soligraph Company) 10000 each of the pictures, sixteen subjects, as represented by the proofs now in our possession." Appellant contends that the word "proofs" in the clause above quoted "must have referred to the roughed pictures of the 3200 delivery, of which the Soligraph Company had a large number and Turner had a set," and that therefore the contract of September 7th required the plaintiff to deliver to the Soligraph Company roughed or embossed prints. The word "proofs" in relation to prints or engravings has a definite and well settled meaning. "An impression taken from an engraved plate to show its progress during the execution of it," is a proof. Cent. Dic. Plaintiff, when the plates were first made, sent to Stevens two or three sets of "proofs" from each plate. Stevens returned one set ap-

Turner v. Osgood Art Colorotype Co.

proved by him, and so far as shown by the evidence he retained the other set, or two sets if three sets were delivered, and they were in the possession of the Soligraph Company, or of Stevens, its manager, when the contract of September 7th was made. That contract was between plaintiff and the Soligraph Company, not between plaintiff and Henry L. Turner. Turner only guaranteed that the Soligraph Company would perform its contract. The words "our possession" in the contract refer to the possession of the Soligraph Company, not to the possession of Turner, and the phrase "proofs now in our possession," we think, refer to the one or two sets of "proofs" that were delivered by plaintiff to Stevens and retained by him when he returned one set to the plaintiff with his "O. K." thereon, and do not refer to the 3200 sample prints that were delivered to Stevens long after the "proofs" were delivered. The "proofs" were not roughed or embossed, and if we are correct in our conclusion that the word "proofs" in the contract refers to and means the "proofs" and not the sample prints that were delivered by plaintiff to Stevens, it is clear that the contract of September 7th did not impose upon the plaintiff the obligation to emboss the prints.

But if the word "proofs" in the contract of September 7th means and refers to the sample prints, still it cannot, in our opinion, be held that the plaintiff in that contract agreed to emboss the prints. The transaction of September 7th was not a sale by sample. The provision, "You agree to deliver to us 10000 each of the pictures, sixteen subjects, as represented by the proofs now in our possession," identifies and points out what prints the plaintiff thereby agreed to deliver, and cannot be held to import or imply an agreement on the part of the plaintiff that the prints which it thereby agreed to deliver should be embossed because the sample prints therein called "proofs" were embossed.

The contention that by the contract of April 13th the plaintiff agreed to furnish embossed prints cannot be sustained.

The proposals of April 12th and 13th are in much detail.

They specify the number of colors in which the plate of the painting to be copied shall be printed, the sizes of such colortype plates, the sizes of the backgrounds, the weight of the paper, the number of impressions that shall be upon each sheet when delivered, etc.

The first clause of the proposal of April 12th is, "We propose to furnish reproductions by our colortype process of sixteen oil paintings and print 10000 copies of each subject," and neither in that proposal nor in that of April 13th is any mention made of embossing or roughing the prints. The roughing or embossing of a print is no part of the making or engraving of the plate nor of the printing of impressions, "prints," from the plates. When a print is to be embossed it is, after the printing is completed, passed between a revolving steel cylinder with a rough surface and a roller, and the effect is to slightly roughen the surface of the paper of the print. It is, we think, clear that under the terms of the contract of April 13th the prints were to be delivered as they were printed, that it was no part of that contract that plaintiff should emboss the prints after they were printed. This was the construction the parties themselves put upon the contract. The contract of April 13th provided that 200 copies of each plate should be delivered by June 1st. These copies were to be used by canvassers employed to take orders for calendars, in the making of which the prints were intended to be used. These sample prints, 3200 in all, were delivered to Stevens about June 1st, not roughed or embossed, but in the condition that they came from the printer. Stevens returned them a few days later to the plaintiff with a request that plaintiff emboss them so that he might see how they would look after they were embossed. Plaintiff embossed the 3200 sample prints and returned them to Stevens and Stevens then requested the plaintiff to give him a price for embossing the 160,000 prints ordered by Turner April 13th, and plaintiff gave him a price of $4 per thousand. This offer Stevens declined, saying that he could have the prints embossed elsewhere for $3 per thousand. Stevens represented Turner in his deal-

ings with the plaintiff up to the time the Soligraph Company was organized, and thereafter represented that company as its manager. He signed the contract of September 7th for the Soligraph Company. In that contract was inserted the provision in relation to the alterations in the plates, but neither in that contract nor in the negotiations that preceded the making of that contract was anything said about embossing the prints.

It follows from what has been said that, in our opinion, the plaintiff was not bound, expressly or by implication, either by the contract of April 13th or by that of September 7th, to emboss the prints.

The evidence admitted on the part of the plaintiff, of a custom not to emboss prints in the absence of a special order or agreement that they should be embossed, was not harmful to the defendant.

The evidence, in our opinion, proves that the plaintiff complied with the contract of September 7th and fails to prove any good cause or excuse for the refusal of the Soligraph Company to accept the prints that were tendered to it by the plaintiff, and we do not find reversible error in the rulings of the court upon the evidence or the instructions.

The judgment of the Superior Court will be affirmed.

*Affirmed.*